ALVORD V. STRICKLER, RECEIVER, ETC.

The receiver of a bank, under the authority of the proper court, sold the bank's interest in certain mining property, partly on deferred payments due at times expressly stipulated in the agreement. The purchaser was unable to obtain possession, the property being in litigation, and in the hands of another receiver. The evidence not showing an agreement to put the purchaser into possession, *held,* that the court's refusal to compel its receiver to extend the time of the deferred payments was not reviewable.

*Appeal from Superior Court of Denver.*

THE facts are stated in the opinion.

Messrs. MARKHAM and DILLON and PATTERSON and THOMAS, for plaintiff in error.

Messrs. M. B. CARPENTER and C. J. HUGHES, for defendant in error.

MACON, C.   The facts of this case are, shortly, these:

In March, 1883, James M. Strickler, the respondent, was appointed receiver of the Exchange Bank of Denver by the superior court of Denver. Among the assets of said bank was certain mining property in Summit county, Colorado, of the description following: The undivided one-half of the Wire-Patch placer claim, the undivided one-half of the Elephant, and the undivided one-half of the Frederick; the Great lodes; the undivided

one-fourth of the Ontario lode; and all the interest, whatever the same might be, of the said J. M. Strickler, as receiver, in the Queen of the Forest, the Emperor, the Little Morgan, and the Triangle lodes, and the Wire-Patch ditch and water-rights, as the same were described in their respective location and relocation certificates. The interest of the said J. M. Strickler, as receiver, in the said Queen of the Forest, the Emperor, the Little Morgan, and the Triangle lodes, and in the Wire-Patch ditch and water-rights, was an uncertain, indefinite and undescribed interest. On October 18, 1884, said Strickler, as such receiver, by authority of said superior court, entered into a contract with petitioner, C. C. Alvord, to sell him this property for $125,000, $42,000 of which, in furniture then in the St. James Hotel in Denver, was to be paid down, and the balance of the price, $83,000, was to be paid on or before the 18th day of October, 1885; and by the agreement in writing then and there entered into between the parties it was stipulated that default in the payment at the agreed time was to determine the contract, and Strickler was to keep what had been paid by Alvord, and to release Alvord from all liability for the balance remaining unpaid. It was further agreed that Alvord might go into possession of the property, and mine therein, and retain all profits therefrom, until the 12th day of April, 1885, after which date he (Alvord) should pay to Strickler one-half of the net proceeds of the mines. By the agreement it was further provided that time should be of the essence of the contract; and that upon any default on Alvord's part in the payment of any of the sums provided to be paid in the future, at the times fixed therefor, the said agreement should cease and determine, and Alvord should forfeit to Strickler all sums before that time paid under said agreement.

On the 30th of August, 1884, by reason of litigation between Strickler, as receiver of the said Exchange Bank, on the one side, and one Murphy, Litton and McCarty

on the other, as to the title to this property, or some part thereof, one· Charles A. Walker was appointed receiver of the same, by the district court of said Summit county; and on or about the 23d day of September of that year said Walker took possession of the same, and worked and mined in the Elephant lode until the 23d of October following, on which day he quit work thereon, and discharged all his employees. About the 25th of October, 1884, Alvord, in company with one Cronkhite (who had a contingent interest in the agreement for the sale of the property), went to Breckenridge and demanded possession of the Elephant lode from the said receiver, Charles A. Walker, who offered to put Alvord or Cronkhite in possession if they, or either of them, would indemnify him, which they refused to do, and therefore failed to get possession. Afterwards, Murphy took possession of the Elephant lode, and held it during the winter and spring, until about the 20th of April, 1885, when Cronkhite was let into possession, under the receiver, Charles A. Walker, and held it continuously until the trial of this cause. While Walker was in possession as receiver aforesaid, he contracted an indebtedness in working the Elephant lode of about $3,000, which on the 3d day of December, 1884, was made a lien on the property by the district court of said Summit county; but at the trial of this case no steps had been taken to enforce such lien, and by a subsequent order of said court the receiver was required to pay off said lien out of the first net proceeds of the mine. While Murphy held possession of the mine, during the winter of 1884–85 and spring of 1885, he worked it unskilfully, and left it in a ruinous and dilapidated condition; and, when he quit the same, took away the ladders, ore chutes, railroad tracks, ore cars, and all the tools and implements belonging thereto, so that when Cronkhite took possession he found it necessary to expend considerable money in putting the mine into condi-

tion for profitable working. Strickler furnished him $250 for this purpose, but Alvord nothing. Cronkhite increased the indebtedness on the mine to $6,000 in putting it in repair. These facts are undisputed.

In this posture of affairs, Alvord, on the 30th day of September, 1885, filed his petition in the superior court of Denver, praying to be relieved from the payment of the remaining $83,000, to become due, under the contract, on the 18th day of October ensuing, and for an extension of the time for such payment one year after he should obtain possession of the premises. His prayer was founded on the averments that he executed the agreement to buy the property under the belief that he could obtain the money for the last payment by working the Elephant lode, which belief Strickler well knew and encouraged; that during the negotiations for the purchase Strickler promised and assured him that he should have the possession of the property, so that he could work and mine it, and that but for such assurances he would not have agreed to buy it, nor made the contract of the 18th of October, 1884, and that Strickler knew that he would not have done so, and also knew that he depended upon the proceeds of the property for the means with which to meet the deferred payment of $83,000. Furthermore, he averred that the property was in litigation, and was in the hands of a receiver, and in debt, of all which facts he was during the negotiation for and at the execution of the contract in ignorance, but that the said Strickler was cognizant of them all, and concealed the same from him; that after the execution of the contract he went to Summit county, and endeavored to get possession of the Elephant lode, and could not, and that Strickler not only did not put him into possession, but actively prevented him from obtaining it; and that he had never had the possession, and had no means with which to pay the deferred payment of $83,000. Several

other facts are alleged, among which are the erection of a mill, the orders of the district court of Summit county, etc., but they are immaterial, and need not be stated.

Respondent answered, and denied that he knew Alvord depended on the proceeds of the property to pay the $83,000; denied that he encouraged the belief that he could do so by working the said property; denied that, pending the negotiations, he promised or assured Alvord that he should have possession of the property, or any part thereof; denied that Alvord was ignorant of the fact that the property was in litigation, was in the hands of a receiver, or that it was in debt; and denied that by any act, or refusal to act, by him, he kept Alvord out of possession.

The cause was heard upon written and oral evidence, the written evidence being made exhibits in the case, which appear in the record, and the court proposed to petitioner a modification of the agreement as to time, which he rejected, whereupon the petition was dismissed, from which decree the petitioner appealed to this court.

Eleven errors are assigned as ground of reversal of the decree of the court below, but counsel for appellant relied in argument upon the sixth assignment only, which is that "the court erred in its finding that the equities of the case were in favor of the defendant." In fact, counsel for appellant, in their brief and argument, at page 2, say: "The main, in fact the only, points of controversy in the case are these: Did Strickler contract or agree to put Alvord in possession of the mining property? and, if so, did he put him in possession?" In this view of the case (and it is a correct one), the objections to the admission of evidence, and the exceptions to the refusal of the court to allow certain questions to be answered, are of no weight, and cannot affect the solution of the questions raised in the record. The proofs do not support this view of the case, and the petition amounts to no more than an application to the court to compel its receiver to make a

supplemental contract with the petitioner. Whether such authority exists in courts, it is not necessary to decide; but it is clear that the refusal so to do in this case is not reviewable, and therefore the decree of the superior court of Denver should be affirmed.

RISING and STALLCUP, CC., concur.

PER CURIAM. For the reasons assigned in the foregoing opinion the decree of the court below is affirmed.

*Affirmed.*